**IT IS ORDERED as set forth below:**

**Date: January 26, 2017**

_____
**Paul Baisier
U.S. Bankruptcy Court Judge**

_____

**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| In re: | CASE NUMBER: |
| **CLARENCE JIMERSON**, | **16-60838-PMB** |
| Debtor. | CHAPTER 13 |

**MEMORANDUM OPINION AND ORDER CONFIRMING PLAN**[1]

The above-captioned case came before the Court on November 10, 2016 (the "Hearing") for confirmation of a Chapter 13 plan of reorganization (Docket No. 46) (the "Plan") proposed by the Debtor.[2] At the Hearing, counsel for the Debtor appeared in support of confirmation of the Plan and counsel for Deed Co LLC ("Deed Co") appeared in opposition. Counsel for the Chapter

---

[1] This Order constitutes findings of fact and conclusions of law pursuant to Federal Rules of Bankruptcy Procedure 7052 and 9014. Where appropriate in this Order, findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact.

[2] Prior versions of the Debtor's plan are at Docket Nos. 6, 16, 28, 36, and 43. All of the plans are extension plans that pay all creditors in full (as opposed to a composition plan that pays some creditors less than in full). The first version of the Plan was filed on June 22, 2016.

13 Trustee (the "Trustee") also appeared at the Hearing and did not oppose confirmation. The Debtor was also present at the Hearing.

Deed Co purchased real property located at 1256 Joseph E. Boone Boulevard, NW, Atlanta, Georgia 30314 (the "Property")[3] at a tax sale in 2015, and asserts that it is the owner of the Property. Through his Plan, the Debtor seeks, among other things, to redeem the Property. Deed Co filed an *Objection to Confirmation and Motion to Dismiss* (Docket No. 13) on September 8, 2016 (the "Objection"), asserting that the Debtor cannot redeem property sold at a tax sale through a Chapter 13 plan.[4] This Court holds that the Debtor can redeem the Property through the Plan, and will confirm the Plan for the reasons outlined below.

## FACTS[5]

The Debtor purchased the Property on March 27, 1995.[6] Around the same time, for reasons unrelated to the payment of real property taxes, the Debtor conveyed the Property via quitclaim deed to his sister, Annie M. Jimerson. That deed was recorded on April 17, 1995. The Debtor maintained *de facto* control over the Property after the conveyance. During the time that

---

[3] The Property is a four (4) unit residential building, which the Debtor has rented to others. Although at the Prior Hearing (defined below) the Debtor expressed an intent to move into the Property at some undefined time in the future, the Debtor had as of the Hearing not ever lived at the Property. In fact, according to the Debtor, two (2) units are rented to third parties (See *Affidavit Regarding Rental Income* (Docket No. 14)) and the other two (2) units are not presently habitable absent needed renovations.

[4] The Court held an evidentiary hearing in this case on October 4, 2016, on the motion to dismiss this case set forth in the Objection (the "Prior Hearing"). Based on testimony and argument at the Prior Hearing, the Court found that the Debtor had a long term interest in the Property and therefore the case was not filed in bad faith (Docket No. 30).

[5] Some of the facts were adduced from testimony at the Prior Hearing; others are not disputed by the parties.

[6] The street was named Simpson Street at the time of the purchase.

Annie Jimerson held legal title to the Property, *ad valorum* taxes on the Property were not paid.[7] Because *ad valorum* property taxes were not paid on the Property, the Fulton County Tax Commissioner levied and sold the Property at a tax sale conducted by the Sheriff of Fulton County on February 3, 2015 (the "Tax Sale").  Deed Co purchased the Property at the Tax Sale for $16,958.27.[8]  On May 22, 2016, Deed Co served notice (the "Barment Notice") on Annie Jimerson and the other parties required to receive that notice by O.C.G.A. § 48-4-45.  The Barment Notice stated that the recipients had until June 27, 2016 (the "Redemption Deadline") to redeem the Property pursuant to O.C.G.A. § 48-4-40.  For the purposes of confirmation, there is no dispute that the Tax Sale was proper or that the Barment Notice was properly provided.[9]

On June 20, 2016, Annie Jimerson conveyed the Property back to the Debtor via quitclaim deed.  That deed was recorded on June 21, 2016.  The Debtor filed this case on June 22, 2016 (the "Petition Date") under Chapter 13 of Title 11 of the United States Code (the "Bankruptcy Code").  On the same day, the Debtor filed the first version of the Plan, invoking the right to

---

[7] Annie Jimerson testified at the Prior Hearing that the Debtor was solely responsible for the taxes, that she has not made any improvements on the Property, and that she did not know the tenants on the Property or collect rent from them.

[8] The Debtor scheduled the Property as having a fair market value of $169,200.  In his testimony at the Prior Hearing, the Debtor said that he based that value on the 2016 Fulton County tax assessed value of the Property. No other evidence of the value of the Property was presented at the Hearing or the Prior Hearing.  Other than Deed Co's claim to the Property, the Property appears to be encumbered by an interest in favor of Investa Services for $3,225.77 (likely a purchaser of other unpaid taxes on the Property) and by liens for other unpaid taxes in favor of the Fulton County Tax Commissioner (see Claim No. 2 in the amount of $26,777.16).  The Investa claim is to be paid in full under the Plan. The Plan proposes to pay the Tax Commissioner a total of $23,127.30, an amount that exceeds the amount of the Tax Commissioner's filed claim less the amount that the Debtor has already paid on that claim pursuant to the Court's instruction. (See Docket No. 48, showing payment of the 2016 taxes of $4,153.41).  Neither Investa nor the Fulton County Tax Commissioner objected to the confirmation of the Plan, and no objection was raised as to the payments to be made to the Tax Commissioner.

[9] At the Prior Hearing, counsel for the Debtor suggested that investigation of all such matters was needed and would occur, and that the Debtor may dispute such matters.  At the Hearing, counsel for the Debtor affirmatively abandoned any such arguments for the purposes of confirmation of the Plan.

3

redeem the Property and proposing to pay all of his debts (including the redemption amount) in full. With the statutory interest added since the time of the Tax Sale, the redemption amount as of the Petition Date was $22,045.75 (the "Redemption Amount").[10]

## DISCUSSION[11]

The two (2) issues before the Court regarding the confirmation of the Plan both relate to the right of redemption that the Debtor seeks to exercise in his Plan. They are (1) whether the Debtor, having been transferred an interest in the Property after the tax sale and after the delivery of the Barment Notice, has a right of redemption under Georgia law and, if so, (2) whether the Debtor can pay the Redemption Amount over the term of his Plan.[12] These issues are addressed below in turn.

### DOES THE DEBTOR HAVE A RIGHT OF REDEMPTION

Under Georgia law, taxes are assessed against real property as of January 1 of each year, and the taxpayer holding the property as of January 1 is responsible for "returning" it. O.C.G.A. § 48-5-10. "Liens for all taxes due the state or any county or municipality in the state shall arise as of the time the taxes become due and unpaid and all tax liens shall cover all property in which

---

[10] This figure is the amount set forth in the Plan. Deed Co has not filed a proof of claim in this case (see Claims Docket, *passim*), nor has it presented any evidence or argument in this case that would permit the Court to determine that the current redemption amount is some other figure. Because of these failures by Deed Co, and because Deed Co did not object confirmation of the Plan on the basis that the redemption amount in the Plan was inaccurate, the Court finds that the amount set forth in the Plan is the required redemption amount for the purposes of the Plan.

[11] This Court has jurisdiction over this matter under 28 U.S.C. § 1334. Venue is proper in this Court under 28 U.S.C. § 1409. This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

[12] Deed Co does not argue that the Debtor lost his rights in the Property when he failed to pay the Redemption Amount in full by June 27, 2016. Instead, Deed Co asserts that 11 U.S.C. §108(b) extends the redemption period by sixty (60) days, such that it is Deed Co's position that the Debtor lost his rights in the Property when he failed to pay the Redemption Amount in full by August 26, 2016.

the taxpayer has any interest from the date the lien arises until such taxes are paid." O.C.G.A. § 48-2-56(a).

If taxes are not timely paid, the tax commissioner may, after notice to the property owner, issue executions to the sheriff to levy upon the property of the taxpayer. O.C.G.A. § 48-1-3 *et. seq.* After property is sold at a tax sale, O.C.G.A. § 48-4-40 provides

> Whenever any real property is sold under or by virtue of an execution [*fi fa*] issued for the collection of state, county, municipal, or school taxes or for special assessments, the defendant in *fi. fa.* or any person having any right, title, or interest in, or lien upon such property may redeem the property from the sale by the payment of the amount required for redemption, as fixed and provided in Code Section 48-4-42:
>
> (1) at any time within 12 months from the date of the sale; and
>
> (2) At any time after the sale until the right to redeem is foreclosed by the giving of the notice provided for in Code Section 48-4-45.

O.C.G.A. § 48-4-40 (the right to redeem under this section, the "Right of Redemption"). There is no dispute that the Tax Sale was properly conducted, that the Barment Notice was properly sent, or that the deadline to redeem based on the Barment Notice was June 27, 2016. Without deciding whether the Right of Redemption is transferable, at a minimum, the Debtor obtained an interest in the Property when Annie Jimerson re-conveyed the Property to him on June 20, 2016, prior to the Redemption Deadline. O.C.G.A. § 48-4-40 provides that any party with an interest in the property may redeem the property at any time until the Redemption Deadline. It does not distinguish between a person acquiring that interest before or after the tax sale or either of the two (2) deadlines contained in that section. A plain reading of that section would be that anyone with an interest at any point within the time frame allowed by the statute possesses and may exercise a Right of Redemption. Therefore, the Debtor possessed a Right of Redemption on the Petition

5

Date, and the Court must address the second question - whether the Debtor can exercise the Right of Redemption by paying the Redemption Amount under his Plan.

### CAN THE REDEMPTION AMOUNT BE PAID OVER THE TERM OF A PLAN

Courts in this District are split as to whether a debtor who files a Chapter 13 bankruptcy case between the delivery of a barment notice under by O.C.G.A. § 48-4-45 and the deadline for redemption arising from that barment notice can pay the redemption amount over time pursuant to a Chapter 13 plan, or whether instead the debtor must pay the redemption amount in full by a date that is no later than sixty (60) days[13] after the filing date of the bankruptcy case.[14] The first case in this District to answer that question, Francis v. Scorpion Group, LLC (In re Francis), 489 B.R. 262 (Bankr. N.D. Ga. 2013) (Hagenau, J.)("Scorpion"), held, on facts very similar to this case, that the debtor can pay the redemption amount over the term of a Chapter 13 plan. More recently, Chief Judge Mullins decided two (2) such cases and held in each case that a debtor cannot pay the redemption amount over the term of a plan. Callaway v. Harvest Assets, LLC (In re Callaway), Bankr. Case No. 14-64446-CRM, Docket No. 36 (Bankr. N.D. Ga. February 6, 2015), aff'd Case

---

[13] The extension to sixty (60) days after filing would be based on 11 U.S.C. §108(b).

[14] If the redemption period has expired prior to the filing of the bankruptcy case, there is no dispute that a debtor has no rights in the tax sale property, and thus cannot redeem that property through a plan. See Georgia Lien Services, Inc. v. Barrett, 272 Ga.App. 656, 658, 613 S.E.2d 180, 183-83 (Ga. App. 2003); Boroughs v. Lance, 213 Ga. 143, 144, 97 S.E.2d 357, 358 (1957); Metro Inv. Partners v. Baker (In re Baker), Bankr. Case No. 08-83963, Docket No. 33, at *4 (Bankr. N.D.Ga. Feb. 24, 2009); see also In re Moore, 448 B.R 93 (Bankr. N.D.Ga. 2011) (in the context of a title pawn, the debtor could not redeem automobile when title pawn redemption period had expired before the case was filed). Conversely, if the barment notice has not been served when the bankruptcy case is commenced, a debtor almost certainly has the ability to exercise the redemption right by making payments over time in a Chapter 13 plan, since in those circumstances (i) there is no alleged conflict between 11 U.S.C. §108 and 11 U.S.C. §1322 (see infra), (ii) the right to redeem does not simply expire through the passage of time (see O.C.G.A. § 48-4-40)(requiring the sending of the barment notice and the expiration of a statutory time period to terminate the right) and (iii) the sending of the barment notice after the bankruptcy filing is prohibited by the automatic stay and may in appropriate circumstances remain stayed, such that the right never expires under state law. See Greyfield Resources, Inc. v. Drummer and Goodman (In re Drummer), 457 B.R. 912 (Bankr. N.D.Ga. 2011).

No. 1:15-cv-00570-ODE (N.D.Ga. Oct. 30, 2015) ("Callaway");[15] and In re Edwards, Bankr. Case No. 14-51366-CRM, Docket No. 35 (Bankr. N.D. Ga. Nov. 13, 2014) ("Edwards").

This Court agrees with the analysis set forth in Scorpion. As set forth below, the Property is property of the estate; Deed Co holds a claim in this case secured by the Property; and that secured claim can be modified pursuant to 11 U.S.C. § 1322(b).

## PROPERTY OF THE ESTATE

Property of the estate is defined in the Bankruptcy Code as "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a). In this case, Deed Co. holds legal title to the Property. Bare legal title, however, is not the only factor to consider in determining what constitutes property of the estate. Scorpion, 489 B.R. at 266. For example, under a deed to secure debt in Georgia, the borrower does not hold legal title to the property, but nonetheless that property is unquestionably property of the borrower's bankruptcy estate because the borrower possesses the rest of the "bundle of rights" that constitute ownership. Id. (citing Citizens' S. Bank v. Realty Sav. & Trust Co., 167 Ga. 170, 144 S.E. 893 (1928)). The same is true of a tax deed holder prior to the expiration of the Right of Redemption. Although the lender's rights are bargained for, and the tax deed holder's rights are created by statute, the result is an almost identical relationship between the parties. Scorpion, 489 B.R. at 266-67. Like a lender, if a tax sale purchaser attempted to enter the property while the debtor retains the "bundle" of

---

[15] This Court is not bound by Callaway, as a district court opinion in a multi-judge district court is not binding on a bankruptcy court in that district. See, e.g., State Farm Mut. Auto Ins. Co. v. Bates, 542 F. Supp. 807, 816 (N.D.Ga. 1982); Baker v. Health Srvs. Credit Union (In re Baker), 264 B.R. 759, 762-63 (Bankr. M.D. Fla. 2001); In re Finley, Wagner, Heine, Underberg, Manley, Myerson & Casey, 160 B.R. 882, 898 (Bankr. S.D.N.Y. 1993); In re Shattuc Cable Corp., 138 B.R. 557, 566 (Bankr. N.D. Ill. 1992), disapproved of on other grounds. Instead, district court opinions are only persuasive authority. Deed Co conceded that this was the case at the Hearing and in its pleadings (see Docket No. 45, n. 1).

rights (exclusive of legal title), the tax sale purchaser could be liable for trespass.  Scorpion, 489 B.R. at 266 (citing Brown Inv. Group, 289 Ga. at 68).  The tax sale purchaser only holds an inchoate title to such property.  Id. at 266 (citing Brown Inv. Group, LLC v. Mayor & Alderman of City of Savannah, 289 Ga. 67, 68, 709 S.E.2d 201 (2011)).  Like a lender, a tax purchaser's title is subject to divestment if the delinquent taxpayer pays a certain amount, and until that right of redemption expires, the delinquent taxpayer retains all the remaining rights in the "bundle of rights," including, *inter alia*, the right to possession, use, and proceeds.  Scorpion, 489 B.R. at 266-67.[16]

As noted above, Deed Co argues that, because it holds legal title, the Property is not property of the estate.  This argument ignores the rest of the rights that are included in the "bundle" of rights that make up the Property, all of which belonged to the Debtor as of the Petition Date.  These are the same rights that a borrower would hold against a lender under a deed to secure debt in Georgia, and property subject to a security deed would, without a doubt, be considered property of the estate.  Bearing in mind all of the rights in the Property that the Debtor possessed on the Petition Date,[17] this Court finds that the Property is property of this Debtor's Chapter 13 estate.[18]

---

[16] These additional rights possessed by the debtor in Scorpion and the Debtor in this case also distinguish these cases from Commercial Fed. Mortgage Corp. v. Smith (In re Smith), 85 F.3d 1555 (11th Cir. 1996), in which the debtor held only a post-foreclosure right of redemption under Alabama law.  The debtor in that case was required to surrender possession of the property in order to preserve his right to redeem under Alabama law.  Smith, 85 F.3d at 1557 (citing Ala. Code § 6-5-251 (1993)).  Consequently, the debtor in Smith no longer held any of the real property bundle of rights that might have allowed the debtor to treat the property as property of his estate, such as the rights the Debtor still possesses in this case (i.e. use, proceeds, etc.).  Instead, he held only a personal property right to redeem, which the court held he could not modify.  See In re Ferrouillat, 558 B.R. 938, 942-43 (Bankr. S.D. Ala. 2016) (noting that in the context of a tax sale redemption, the debtor retained all rights in the property other than legal title and agreeing with the analysis in Scorpion).

[17] The courts in Edwards and Callaway began their analyses by acknowledging that the tax deed holder possessed

8

**DEED CO'S SECURED CLAIM**

Having determined that the Property is property of the estate, the Court now turns to the treatment of the claim of Deed Co with regard to the Property. The Court concurs with Scorpion that Deed Co should be treated as the holder of a secured claim. Scorpion, 489 B.R. at 267. The Bankruptcy Code defines a claim as:

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

---

legal title and the debtor possessed a right of redemption. Edwards, at *5-6; Callaway, at *10. Both then ignored the debtor's other rights, and focused the analysis solely on the right to redeem. See Edwards, at *5-7 ("The sale divested the Debtor of title to the Property, leaving Debtor with a right to redeem property"); Callaway, at *11 ("First, Appellant had only a right to redemption in the Property at the time that he filed for bankruptcy, as title to the Property had passed when the [tax sale purchaser] purchased the tax deed."). Neither court explained why it did not consider the other rights the debtors possessed to be relevant. See generally Edwards; Callaway. But, as the court in Scorpion highlighted, the Debtor in this case possesses more than just the Right of Redemption. Because the Right of Redemption had not expired as of the Petition Date, the Debtor possessed on the Petition Date *all the rights* to the Property with the exception of legal title, just like the debtor in Scorpion did and just like the borrower on any Georgia deed to secure debt would.

[18] Proposing a plan to pay the redemption amount in full with interest within the redemption period, including the extension of 11 U.S.C. § 108(b), as the Debtor did here, also constitutes the "affirmative steps" that the Eleventh Circuit may require to render the Property "property of the estate". See In re Lewis, 137 F.3d 1280 (11th Cir. 1998); Scorpion, 489 B.R. at 267; Moore v. Complete Cash Holdings, LLC (In re Moore), 448 B.R. 93 (Bankr. N.D.Ga. 2011); see also In re Terry, 505 B.R. 660, 663-64 n.1 (Bankr. E.D.Pa. 2014). In Lewis, the Eleventh Circuit held that a debtor must take "certain affirmative steps to change the otherwise dormant right to redeem . . . into a meaningful ownership interest." Id. at 1284. The Lewis court did not articulate what those "certain affirmative steps" would be; instead, it found that because the debtor in that case had proposed a plan that only paid the creditor 62 cents on the dollar, and did not explicitly exercise the right of redemption, that debtor had failed to take the requisite affirmative steps to exercise that right of redemption. Id.; see also Moore, 448 B.R. at 102 (finding that the debtor failed to take any affirmative steps). However, the Lewis court's conclusion that filing a less than 100% plan was not an "affirmative step" does suggest that a debtor's proposal of a 100% plan would be (or why mention the terms of the debtor's proposed but not confirmed plan at all). Since Lewis, no court in this circuit has explicitly stated what a satisfactory affirmative step would be. Additionally, although not specifically addressing the concept of "affirmative steps," courts in other circuits have held that proposing a plan to pay the redemption amount in full is a valid exercise of the right of redemption. See, e.g., Frazer, 377 B.R. 621; Pittman, 549 B.R. 614; McKinney, 341 B.R. 892.

9

11 U.S.C. § 101(5). Further, the Supreme Court has made it clear that "claim" is to be interpreted broadly. See Pa. Dep't of Public Welfare v. Davenport, 495 U.S. 552, 110 S.Ct. 2126, 109 L.Ed.2d 588 (1990); Johnson v. Home State Bank, 501 U.S. 78, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991); Scorpion, 489 B.R. at 267-68. The facts in Johnson are most analogous to the case at bar.

In Johnson, the debtor filed for Chapter 13 relief and proposed to treat a mortgage in his plan; however, the personal liability of the debtor on the mortgage had already been discharged by the debtor's prior Chapter 7 case. Johnson, 501 U.S. at 80. Therefore, since the debtor had no personal liability for its repayment, the mortgage loan was entirely non-recourse. Id. at 83. Even though both subparts of 11 U.S.C. § 101(5) refer to an underlying right to payment, and a non-recourse loan could be said to provide no right to payment, the Supreme Court found that the right to proceeds from the sale of the property is a "right to payment" and, alternatively, the right to foreclose on the property is right to an equitable remedy as contemplated in 11 U.S.C. § 101(5)(B). Id. at 84. The court in Scorpion and several other cases, following Johnson, have likewise found that the interest that a tax deed holder possesses is the same as the interest held by the non-recourse mortgagee in Johnson, and therefore the tax deed holder holds a "claim" as defined in the Bankruptcy Code. Scorpion, 489 B.R. at 268-69; see also, e.g., In re Ferrouillat, 558 B.R. 938, 942-43 (Bankr. S.D. Ala. 2016);[19] In re Martin, 496 B.R 323, 328-29 (Bankr. S.D.N.Y. 2013); In re Romious, 487 B.R. 883, 886 (Bankr. N.D. Ill. 2013); In re Bates, 270 B.R. 455 (Bankr. N.D. Ill. 2001). By contrast, because the court Callaway had already concluded that the subject property

---

[19] The court in Ferrouillat also distinguished the facts in that case from Smith on the grounds that Smith was in the context of a mortgage foreclosure redemption, and Ferrouillat was in the context of a tax sale redemption, specifically noting that the debtor retains more rights after a tax sale than it would after a mortgage foreclosure. Ferrouillat, 558 B.R. at 942-43.

10

was not property of the estate, and the only right the debtor possessed was the right of redemption, it held that the only related obligation was that of the tax purchaser to return title to the property to the debtor upon a timely tender of the redemption amount. Callaway, at *12. Therefore the tax-sale purchaser did not have a secured claim. Id.[20]

From the Debtor's perspective, the Debtor holds the Property subject to an obligation to pay the Redemption Amount or forfeit all of its remaining rights to the Property, and therefore, as the court in Scorpion found, Deed Co has a claim secured by a lien. See Scorpion, 489 B.R. 269 (quoting the definition of lien in 11 U.S.C. § 101(37)). If a claim is secured by a lien on property with a value equal to or exceeding the claim value, then such claim is a secured claim pursuant to 11 U.S.C. § 506. Deed Co has a claim of approximately $22,000 for the Redemption Amount. Other claims to the Property do not exceed $30,000. The Property has a value of $169,200. Consequently, the value of the Property is equal to or exceeds the value of all claims secured by it, and Deed Co holds a fully secured claim in this case.

### DEED CO'S CLAIM CAN BE MODIFIED PURSUANT TO 11 U.S.C. § 1322(b)

Ordinarily in a Chapter 13 case, a secured claim not secured by a lien on the debtor's principal residence (like Deed Co's claim here) can be modified pursuant to 11 U.S.C. § 1322(b). See Scorpion, 489 B.R. at 269. Courts are split, however, in the context of a tax redemption, whether 11 U.S.C. § 1322 can be used to permit the redemption amount to be paid over time, or whether 11 U.S.C. § 108(b) provides the only extension of time associated with redemption, foreclosing modification of the payment obligation under 11 U.S.C. § 1322. Compare, e.g., In re

---

[20] It was never explicitly stated in Edwards that the tax sale purchaser did not hold a secured claim, but that conclusion seems implicit from the opinion. See generally Edwards, at 11-15.

11

Pittman, 549 B.R. 614, 629-30 (Bankr. E.D.Pa. 2016); Scorpion, 489 B.R. at 269-70; In re McKinney, 341 B.R. 892, 899 (Bankr. C.D. Ill. 2006), aff'd Salta Group, Inc. v. McKinney, 380 B.R. 515 (C.D. Ill. 2008); Bates, 270 B.R. 455; with, e.g., Callaway, at *11-12; Edwards, at *11-13; In re Froehle, 286 B.R. 94, 103 (8th Cir. B.A.P. 2002); In re Mangano, 253 B.R. 339, 344-45 (Bankr. D.N.J. 2000). Based upon the principles of statutory analysis set forth below, this Court joins Pittman, Scorpion, et. al, and holds that 11 U.S.C. § 108(b) does not prohibit the Debtor from paying Deed Co's claim over the Debtor's Plan pursuant to 11 U.S.C. § 1322(b)(2).

11 U.S.C. § 1322(b)(2) provides that a plan may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims." 11 U.S.C. § 1322(b)(2). As set forth above, Deed Co possesses a claim secured by a lien (in the form of conditional title) on the Property. The Debtor does not reside in the Property. Consequently, Deed Co's claim can be modified under 11 U.S.C. § 1322(b)(2) unless the application of 11 U.S.C. § 1322(b)(2) is somehow foreclosed by 11 U.S.C. § 108(b).

The courts in Edwards and Callaway, like the other courts that preclude the application of 11 U.S.C. § 1322(b), held that only 11 U.S.C. § 108(b) could extend the redemption period, and that extension was capped at an additional sixty (60) days for the debtor to pay the entire redemption amount. Callaway, at *11-12; Edwards, at *14. Those courts held that the right of redemption is a property right granted by state law, and therefore can only be modified to the extent explicitly allowed by the Bankruptcy Code. Callaway, at *12; Edwards, at *11-13. In their analysis, however, they started with the proposition that 11 U.S.C. § 108(b) specifically addresses the kind of deadline applicable in tax redemptions, and therefore grants a sixty (60) day

12

extension of any prepetition deadline. Callaway, at *12; Edwards, at *11-13. Next, they held that any other extension, such as paying the redemption amount over the course of a Chapter 13 plan pursuant to 11 U.S.C. § 1322(b)(2) would impermissibly expand that state-law determined right. Edwards, at *14. They reasoned that once the sixty-day extension has passed, the debtor's rights were automatically forfeit, and therefore there is no claim left for 11 U.S.C. § 1322 to treat. Edwards, at *11 (citing Smith, 85 F.3d at 1560). "To enlarge the redemption period would enlarge a debtor's property rights beyond those specifically set forth by state law and by Congress under section 108(b)." Edwards, at *13 (citing The Fed. Land Bank of Louisville v. Glenn (In re Glenn), 760 F.2d 1428, 1441 (6th Cir. 1985); Johnson v. First Nat'l Bank of Montevideo Minn., 719 F.2d 270, 274 (8th Cir. 1983)). The holdings in those cases, however, must be considered in the context of those courts also finding that the tax sale purchaser does not hold a claim.[21]

In contrast to those cases, the court in Scorpion held that the tax sale purchaser held a secured claim. Scorpion, 489 B.R. at 269. In that context, the court compared the interplay of 11 U.S.C. §§ 108 and 1322, Id. (citing cases), and held that although 11 U.S.C. § 108(b) was an expansion of state law rights by Congress, it was not intended to limit the applicability of any other provision of the Bankruptcy Code. Id. (citing Bates, 270 B.R. 455); see also Pittman, 549 B.R. at 629-30. Having found that the Property is property of the estate, and that Deed Co holds a claim, we adopt this latter analysis, as further outlined below.

---

[21] As further context for Edwards, though not explicitly stated in its analysis, the debtor in that case was also not proposing to pay the tax sale purchaser in full. Edwards, at *2. The sale price at the tax sale was $15,500, but the debtor was only proposing to redeem the property for $4,000. Id. Thus, in addition to paying over a longer period, the debtor was proposing to pay less than the amount required by O.C.G.A. § 48-4-40. This Court agrees with the court in Edwards that the combination of two such alterations is certainly an impermissible modification of a debtor's state law property rights.

It is a well-accepted principle of statutory construction that two statutes should not be interpreted to be in irreconcilable conflict if they can be interpreted to avoid that conflict. See Johnson v. Midland Funding, 823 F.3d 1334, 1340 (11th Cir. 2016) (citing J.E.M. Ag. Supply, Inc. v. Pioneer Hi-Bred Int'l, Inc., 534 U.S. 124, 143-44, 122 S.Ct. 593, 605, 151 L.Ed.2d 508 (2001); Walthour v. Chipio Windshield Repair, LLC, 745 F.3d 1326, 1331 (11th Cir. 2014) (citing Morton v. Mancari, 417 U.S. 535, 550-51, 94 S.Ct. 2474, 41 L.Ed.2d 290 (1974); Pittman, 549 B.R. at 629). If such a conflict exists, however, the more specific statute should control over the more general one. Gilbert v. U.S., 640 F.3d 1293, 1308 (11th Cir. 2011) (citing Morton, 417 U.S. at 550-51). These principles apply with equal force to the Bankruptcy Code. In re Cox, 338 F.3d 1238, 1243 (11th Cir. 2003) (citing Morton, 417 U.S. at 550-51; see also Pittman, 549 B.R. at 629 (citing Bank of Commonwealth v. Bevan, 13 B.R. 989, 994 (E.D. Mich. 1981) (citing Richards v. United States, 369 U.S. 1, 11, 82 S.Ct. 585, 7 L.Ed.2d 492 (1962))). In this case, it is possible to interpret these two statutes to avoid any conflict; however, if there is a conflict, the more specific statute (11 U.S.C. § 1322(b)) should govern over the more general one (11 U.S.C. § 108(b)).

11 U.S.C. §§ 108 and 1322 are not actually in conflict in this case. The Debtor proposed a Chapter 13 plan prior to the expiration of 11 U.S.C. § 108(b)'s sixty-day period[22] that proposes to pay the redemption amount in full, albeit over time pursuant to 11 U.S.C. § 1322, thus exercising the right of redemption timely. That exercise takes 11 U.S.C. § 108 out of the equation. In that respect, Pittman is directly on point. Under Pennsylvania law (applicable in Pittman), like Georgia law (applicable here), a tax sale purchaser has an inchoate, defeasible title to the subject

---

[22] In fact, the Debtor proposed such a plan prior to the expiration of the original redemption period, without regard for the extension provided by 11 U.S.C. § 108.

property. Pittman, 549 B.R. at 622. Prior to the expiration of the *original* redemption period, the debtor filed for bankruptcy and proposed a plan that would pay the redemption amount in full with interest to account for payment over time. Id. at 617-18. Simply proposing a plan to pay the redemption amount in full was an exercise of the right of redemption and did not require any additional steps, including a lump sum payment. Id. at 630-31.

Although the applicable state law might require a lump-sum payment, Chapter 13 of the Bankruptcy Code allows a debtor to pay debts over time, and the Bankruptcy Code supersedes state law. Id. at 629-30 (citing Vanston Bondholders Protective Comm. v. Green, 329 U.S. 156, 162–63, 67 S.Ct. 237, 91 L.Ed. 162 (1946)). When proposing a plan under Chapter 13, other than complying with the requirements of Chapter 13, no action other than filing a plan proposing to pay the redemption amount is required. Pittman, 549 B.R. at 630-31 (holding that Fed. R. Bankr. P. 6008 only applies to Chapter 7 and that 11 U.S.C. § 108 does not require any specific action). Based on cases setting forth similar reasoning, Scorpion also held that, as applied to a redemption of property subject to a tax deed, 11 U.S.C. § 1322(b)(2) allowed the redemption amount to be paid in full over the length of a chapter 13 plan and was not limited by 11 U.S.C. § 108(b). Scorpion, 489 B.R. at 269-70 (citations omitted).

In the case at bar, the Debtor proposed an extension plan prior to the date the Right of Redemption would have expired under state law, without regard to the extension provided by 11 U.S.C. § 108(b). The Plan will pay the Redemption Amount in full, plus interest. This Court finds that the filing of an extension plan to be the timely exercise of the Right of Redemption within the extension granted by 11 U.S.C. § 108(b). Having found that the Debtor's Right of Redemption has been properly and timely exercised and that Deed Co has a secured claim not

15

secured by the Debtor's principal residence, Deed Co's claim can be paid over the length of the Plan pursuant to 11 U.S.C. § 1322(b)(2). Thus, the Court gives full effect to both 11 U.S.C. §§ 108(b) and 1322(b)(2).

Alternatively, if proposing a plan to pay the Redemption Amount in full is not sufficient to exercise the Debtor's Right of Redemption during the period provided by 11 U.S.C. § 108(b), 11 U.S.C. § 1322(b)(2) nonetheless controls over 11 U.S.C. § 108(b) and permits the treatment of the Redemption Amount as proposed in the Plan. 11 U.S.C. § 108(b) was added to the Bankruptcy Code in 1978, based on a predecessor section, Section 11(e), that was added in 1938. See McKinney, 341 B.R. at 899. 11 U.S.C. § 108(b), and its predecessor, were intended to provide the trustee or similarly situated party a brief extension to preserve any asset for the estate that might otherwise be lost under applicable non-bankruptcy law. Id.; see also 2 COLLIERS ON BANKRUPTCY ¶ 108.03 (Alan N. Resnick & Henry J. Sommer, 16th ed.). It is an expansion of a deadline of a non-bankruptcy right, but it should not affect any other rights the Bankruptcy Code. 2 COLLIER ON BANKRUPTCY ¶ 108.03[3]; Moody v. Amoco Oil Co., 734 F.2d 1200 (7th Cir. 1984) (holding that 11 U.S.C. § 108(b) did not affect the rights granted to a debtor under 11 U.S.C. § 365); In re Frazer, 377 B.R. 621, 632 (9th Cir. B.A.P. 2007); Scorpion, 489 B.R. at 269-70; Bates, 270 B.R. at 466.

In contrast to 11 U.S.C. § 1322, which applies only in Chapter 13, 11 U.S.C. § 108 is a general-application provision of the Bankruptcy Code that applies to all bankruptcy cases. See 11 U.S.C. § 103; compare 11 U.S.C. § 108 with 11 U.S.C. § 1322. As noted above, specific statutory provisions govern over more general ones. Cox, 338 F.3d at 1243 (citing Morton, 417 U.S. at 550-51); Frazer, 377 B.R. at 632 (citing D. Ginsberg & Sons, Inc. v. Popkin, 285 U.S. 204, 208, 52

16

S.Ct. 322, 76 L.Ed. 704 (1932)); see also Dubov v. Read (In re Read), 692 F.3d 1185 (11th Cir. 2014). To the extent that there is a conflict between the two statutes, since 11 U.S.C. § 108 is a general-application provision, and 11 U.S.C. § 1322 is a specific-application provision, 11 U.S.C. § 1322 is controlling over 11 U.S.C. § 108. Pittman, 549 B.R. at 629; Scorpion, 489 B.R. at 270; McKinney, 341 B.R. at 901-02.[23]

Having found that Deed Co has a claim secured by property that is not the Debtor's principal residence, 11 U.S.C. § 1322(b) applies. The Debtor's exercise of its Redemption Right during its state law period harmonizes 11 U.S.C. §§ 108 and 1322. If that harmonization is not adequate, 11 U.S.C. § 1322 controls over 11 U.S.C. § 108, and the Debtor can thus modify Deed Co's rights to the extent that the Redemption Amount can paid in full, with interest, over the term of the Debtor's Plan. Therefore, even if the filing of an extension plan was not an adequate step to exercise the Redemption Right, 11 U.S.C. § 1322(b)(2) permits the Debtor to pay the Redemption Amount over time as proposed in the Plan.

## CONCLUSION

On the Petition Date, the Debtor possessed an unexpired Right of Redemption and the rights to use, possession, and all other rights in the Property except for legal title. Therefore, the Property is property of the Debtor's bankruptcy estate. Deed Co has a right to payment of the Redemption Amount, or the equitable remedy of the Debtor forfeiting all remaining rights in the Property to Deed Co, and therefore Deed Co holds a claim for the Redemption Amount in this case

---

[23] 11 U.S.C. § 108(b) has greater application in the Chapter 7 context, where any redemption must be paid in a lump sum because a repayment plan is not an option. In that context, 11 U.S.C. § 108(b) provides the Chapter 7 Trustee an additional sixty (60) days that it would not otherwise have to exercise that redemption. See McKinney, 341 B.R. at 901-02.

as defined by 11 U.S.C. § 101(5), secured by the Property. The value of the Property exceeds Deed Co's claim. Therefore, Deed Co's claim is fully secured pursuant to 11 U.S.C. § 506. The Property is not the principal residence of the Debtor. Redeeming the Property through the Plan is not an expansion of the Debtor's state-law determined rights, because the Debtor took the affirmative step of proposing an extension plan to pay Deed Co in full within the extension of 11 U.S.C. § 108(b). The Redemption Amount can be paid over time, pursuant to 11 U.S.C. § 1322(b)(2), as proposed in the Plan, because the Property is not the principal residence of the Debtor. Alternately, because 11 U.S.C. § 1322 is a specific-application statute and 11 U.S.C. § 108 is a general-application statute, 11 U.S.C. § 1322(b)(2) still applies and permits this modification of Deed Co's rights to allow the Debtor to pay the Redemption Amount as proposed in the Plan.

Accordingly, it is **ORDERED** that

1) Deed Co's Objection is **OVERRULED**;
2) the Plan is **CONFIRMED**;
3) property of the estate shall not revest in the Debtor until the earlier of discharge of the Debtor, dismissal of the case, or closing of the case without entry of a discharge unless the Court orders otherwise;
4) a creditor must have a proof of claim filed with the Clerk of Court in order to receive a distribution under this Plan, without regard to any other provision of the Plan, with the exception of the payments scheduled under the Plan to Deed Co and to Investa Services;

5) the fixed attorneys' fees provided for in the Plan and disclosed in the disclosure statement required by Federal Rule of Bankruptcy Procedure 2016(b) are allowed as an administrative expense, subject to disgorgement or disallowance upon request of a party in interest or *sua sponte* by the Court; and

6) because no party in interest has filed a request for an order of dismissal pursuant to 11 U.S.C. § 521(i)(2) and because the parties in interest should not be subjected to any uncertainty as to whether this case is subject to automatic dismissal under 11 U.S.C. § 521(i)(2), the Debtor is not required to file any further document pursuant to 11 U.S.C. § 521(a)(1)(B) to avoid an automatic dismissal and this case is not and was not subject to automatic dismissal under 11 U.S.C. § 521(i)(1). This does not prevent any party in interest from requesting by motion that the Debtor supply further information described in 11 U.S.C. § 521(a)(1)(B), and this does not prevent the Chapter 13 Trustee from requesting by any authorized means, including but not limited to motion, that the Debtor supply further information; and

7) upon completion of all payments to Deed Co. required by the Plan, Deed Co shall quitclaim to the Debtor all interests that it held in the Property as of the Petition Date.

The Clerk is directed to serve copies of this Order upon the Debtor, counsel for the Debtor, counsel for Deed Co, the Chapter 13 Trustee, the Acting United States Trustee, all creditors, and all parties requesting notice in this case.

**[END OF DOCUMENT]**